UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE HAND PROMOTIONS, INC.,

    Plaintiff,

v.

GRANADA LOUNGE, INC.,
D.L. THOMPSON, INC., and
DANIEL R. THOMPSON,

    Defendants.
    _____/

Case No. 11-13062

Honorable Nancy G. Edmunds

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [22]**

    Plaintiff Joe Hand Promotions, Inc. filed its complaint on July 15, 2011 alleging claims under the Communications Act of 1934 ("the Act"), 47 U.S.C. §§ 553, 605, and the tort of conversion against Defendants Granada Lounge, Inc., D.L. Thompson, Inc., and Daniel R. Thompson.  On September 1, 2011, the Clerk entered defaults against Defendants [Dkt. # 11, 12, 13], and on January 30, 2012, Plaintiff filed a motion for default judgment against Defendants [22].  Plaintiff seeks a default judgment against Defendants, jointly and severally, in the amount of $110,000.00 plus attorney fees in the amount of $3,222.50 pursuant to 47 U.S.C. §§ 605(e)(3)(c)(i)(II), 605(e)(3)(c)(ii), and 605(e)(3)(B)(iii).

    In response to this Court's earlier Order [23], Plaintiff has submitted amended proofs of service showing that Defendants have been properly served [25].  Despite being served, none of the Defendants have appeared in this action in any manner.

    Since Plaintiff has obtained an entry of default against each of the Defendants, the well-pled factual allegations of Plaintiff's complaint are generally accepted as true, except

for those regarding the amount of damages.  *See Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995).  When a default judgment is sought under Rule 55(b) of the Federal Rules of Civil Procedure, the  the Court must determine the amount of damages to be awarded.

Plaintiff's complaint, motion, and exhibits establish that Defendants violated § 605 of the Communications Act of 1934 by willfully intercepting and displaying the "Ultimate Fighting Championship 91:  Couture v. Lesnar" ("the fight") on Saturday, November 15, 2008, at their commercial establishment located at 10655 W. Michigan Avenue, Saline, Michigan, for direct or indirect commercial advantage or private financial gain.  Specifically, Plaintiff presents evidence that (1) Defendants could have but did not pay to legitimately receive an unscrambled signal enabling them to view the fight by contracting with Plaintiff or an authorized distributor like DirecTV; (2) the commercial rate charged for an establishment with between 51 and 100 patrons is $875.00 (Pl.'s Mot., Ex. F, Rate Card); and (3) an auditor hired by Plaintiff, Eric Hanley, went to Defendants' establishment on November 15, 2008, entered without paying a cover charge, and observed between approximately 68 and 79 people in the establishment watching the fight on four televisions (*id.* at Ex. G, Hanley Aff.).

In this case, Plaintiff is requesting statutory damages of $110,000.  Under § 605(e)(3)(C)(i)(II), the Court may award damages for each violation "in a sum not less than $1,000 or more than $10,000, as the court considers just . . . ."  Section 605(e)(3)(C) also permits the Court, "in its discretion," to "increase the award of damages . . . by an amount of not more than $100,000" if it "finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C.

§ 605(e)(3)(C)(ii).

The damages awarded by the Court "should take into account the proportionality between the loss suffered by the plaintiff and the profit gained by the defendant." *J&J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 501 (S.D. N.Y. 2008). As another judge from this Court determined in *J&J Sports Prods., Inc. v. Trier*, No. 08-cv-11159, 2009 U.S. Dist. LEXIS 6415, at *3 (E.D. Mich. Jan. 29, 2009) (Ludington, J.), "[f]acts relevant to this determination include the number of patrons in the establishment at the time the violation occurred, the seating capacity of the establishment, the various rates, including the residential rate, charged by the plaintiff for the viewing of the broadcast, and whether the defendant charged patrons a cover for the viewing or was likely to have obtained significant profits in another manner." Quoting *Ribeiro*, Judge Ludington explained what the Court should do if the exact number of patrons is unknown:

> When the exact number of patrons is unknown, courts will award a flat sum based on considerations of justice. When the exact number of patrons is known, the court will base the award on the number of patrons in the establishment who viewed the unauthorized showing multiplied by a number set by the court. This number varies widely from $20 to $300, although most courts set a number around $50.

*Id.* (quoting *Ribeiro*, 562 F. Supp. 2d at 501-02) (internal quotation marks and citations omitted). The *Ribeiro* court ultimately multiplied the pay-per-view residential rate ($54.95) applicable in that case times the number of patrons in the bar (13) to arrive at $714.35, but then approximately doubled that damage amount to $1,500, so that the award would not be below the statutory minimum of $1,000. *Ribeiro*, 562 F. Supp. 2d at 502. Then, finding the violation willful, the *Ribeiro* court multiplied the damages by a factor of three, resulting in $4,500 total damages. *Id.* In determining that the appropriate multiplier should be three,

3

the *Ribeiro* court observed that "although the amount of damages should be an adequate deterrent, a single violation is not so serious as to warrant putting the restaurant out of business." *Id.* (internal citation omitted). The court also observed that, because the establishment was a small business and because no cover was charged, the defendant's profits were likely minimal. *Id.*

In this case, Plaintiff presents the following evidence. There was no cover charged; there were between 68 and 79 people in the establishment during the time the fight was aired; and Plaintiff's commercial rate, based on the establishment's capacity at the time of the fight, was $875.00 pursuant to its Rate Card. Plaintiff does not provide any information or evidence of the residential rate that would have been charged for the fight. It is logical to assume that the residential rate would be substantially less than that commercial rate. For example, in *Trier*, the commercial rate was $1,600 for establishments with a seating capacity of 101 to 200, and the residential rate provided was between $34.95 and $54.95. *Trier*, No. 08-11159, Order Granting Plaintiff's Am. Mot. for Def. Judg., at 3 (E.D. Mich. Feb. 23, 2009) (Ludington, J.)

Based on this evidence, a base damage award of $1,000 – the commercial rate Defendants would have been charged by Plaintiff for the fight rounded up to the least statutory amount allowable under §605(e)(3)(C)(i)(II) – is appropriate. Considering the approximate number of patrons in the establishment at the time of the broadcast and the fact that Defendants did not charge a cover, the higher base award of $10,000 that Plaintiff seeks is not justified. Moreover, based on the willfulness of the violation, the Court will, in its discretion, multiply that $1,000 base amount by three. *See* 47 U.S.C. § 605(e)(3)(C)(ii). Accordingly, under §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii), Plaintiff's statutory damages

are $3,000.  Similar to the *Ribeiro* court, this Court finds that this amount of damages is an adequate deterrent and does not find that Defendants single violation is so serious as to warrant the $110,000 in damages that Plaintiff seeks, an amount that could put Defendants out of business.  *See Ribeiro*, 562 F. Supp. 2d at 502.

Under 47 U.S.C. § 605(e)(3)(B)(iii), the Court is also required to award to the prevailing party its full costs, including reasonable attorneys' fees.  Plaintiff's counsel has submitted an affidavit supporting an award of $3,222.50 – $2,792.50 in attorney fees and $430.00 in costs ($350 filing fee; $80 process server fee).  The affidavit breaks down attorney fees as follows:

      Associate Annemarie M. Lepore      15.1 attorney hours at $175 per hour;

      paralegal      2.0 hours at $75 per hour.

Based on Plaintiff's submissions regarding the reasonableness of its attorney fees and costs, the Court will award Plaintiff $3,222.50 in attorney fees and costs.

Plaintiff's motion for default judgment is GRANTED.  Plaintiff is awarded $3,000 in damages, and $3,222.50 in attorney fees and costs.

SO ORDERED.

      s/Nancy G. Edmunds
      Nancy G. Edmunds
      United States District Judge

Dated:  February 13, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 13, 2012, by electronic and/or ordinary mail.

      s/Carol A. Hemeyer
      Case Manager